**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **IMMIGRANT ADVOCATES RESPONSE COLLABORATIVE**, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> **UNITED STATES**, *et al.*, <br><br> Defendants. | Case No. 1:25-cv-2279 (TNM) |

## <u>MEMORANDUM ORDER</u>

This lawsuit challenges several policies the Government adopted to further its immigration enforcement priorities. Plaintiffs say that these policies work together to drive a recurring scenario: The Government orally dismisses a pending proceeding to remove an alien from the country, immediately arrests the alien, and initiates a fast-tracked process to deport the alien.

Seeking to stop these practices, aliens and immigrant advocate groups sued a host of federal defendants (collectively, "the Government") responsible for enforcing immigration laws. Plaintiffs claim that the policies violate the Administrative Procedure Act in many ways. The Government asks the Court to dismiss the case, raising a barrage of issues with Plaintiffs' claims. One of these arguments succeeds. Congress stripped courts of jurisdiction over the individual aliens' challenges to the Government's practice of dismissing full removal proceedings. As for the Government's remaining arguments, they are either unavailing or premature. So the Court grants the motion in part and denies it in part.

## I.

"The Immigration and Nationality Act (INA) establishes procedures for removing aliens living unlawfully in the United States." *Johnson v. Guzman Chavez*, 594 U.S. 523, 526 (2021). Plaintiffs here all have an interest in how the Government carries out the removal process. Most are individual aliens who are either in the middle of a removal proceeding or fear being subject to one. *See* Compl. ¶¶ 16–27, ECF No. 1. Organizations who assist aliens in the removal process join those individuals as Plaintiffs here. *Id.* ¶¶ 28–29. At bottom, Plaintiffs fear that the Government has improperly adopted new policies making it easier to deport aliens. Some background on the removal process sets the scene for Plaintiffs' grievances.

In most cases, when the Department of Homeland Security ("DHS") learns an alien is present in the country without authorization, the agency initiates the removal process by sending the alien a "notice to appear" in immigration court. *See* 8 U.S.C. § 1229(a). An immigration judge presides over the case and the alien participates through evidentiary proffers and requests for relief from removal. *See id.* § 1229a. If the alien receives an order of removal at the end of that process, he can appeal. *See id.* § 1252(b).

Recognizing that this process can be lengthy, Congress created an alternative fast-track process 30 years ago. *See* Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub. L. No. 104-208, Div. C, 110 Stat. 3009–546. The Attorney General can expedite removal for those "who [are] arriving in the United States," 8 U.S.C. § 1225(b)(1)(A)(i), as well as those who are not "admitted or paroled" and who have "not affirmatively shown" to an immigration officer's satisfaction that they have been "physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility," *id.* § 1225(b)(1)(A)(iii)(II). "Expedited removal lives up

to its name." *Make the Rd. New York v. Wolf*, 962 F.3d 612, 619 (D.C. Cir. 2020).  Aliens in expedited removal receive more limited process than those in full removal proceedings, including fewer opportunities for relief from deportation.  *See id.*

Plaintiffs claim that both the full and expedited removal processes have changed dramatically—and unlawfully—since May 2025.  *See* Compl. ¶¶ 1–12.  They challenge three interrelated sets of removal policies, as well as a change in arrest policies.  *First*, they allege that both DHS and the Justice Department's Executive Office for Immigration Review ("EOIR") have issued guidance encouraging quick dismissal of full removal proceedings.  Compl. ¶¶ 60–65.  Call these the "Dismissal Policies."  Under this guidance, officials allegedly orally dismiss the cases, giving aliens little or no opportunity to respond.  *See id.* ¶¶ 61, 64.

*Second*, Plaintiffs allege that the Government issued "Concurrent Proceedings Guidance" instructing DHS officials to initiate expedited removal proceedings against an alien who is still in a full removal proceeding.  *Id.* ¶¶ 66–67.  Plaintiffs primarily fear that the Government initiates expedited removal immediately after dismissing the full removal proceeding, without allowing time for the alien to appeal.  *See id.* ¶ 67; Opp. to Mot. to Dismiss ("Opp.") at 19–20, 53–54, ECF No. 38.  The upshot is that an alien could be ordered removed through expedited removal while his dismissal appeal remains pending.  *See, e.g.*, Compl. ¶ 67; Opp. at 53–54.[1]

*Third*, Plaintiffs allege that the Government is applying expedited removal to more aliens than ever before in violation of statutory constraints.  *See* Compl. ¶¶ 91–100.  They claim that DHS issued guidance permitting agents to apply expedited removal to aliens in the country for more than two years, contrary to the statute.  *Id.* ¶ 92; *see* 8 U.S.C. § 1255(b)(1)(A)(i).

---

[1]  Because the Government does not argue otherwise, the Court assumes for now that Plaintiffs are correct that an alien can *administratively* appeal the dismissal of a removal proceeding against them.  *See* Opp. at 54.

Putting these three policies together, Plaintiffs say, results in a recurring scenario. The Government orally moves to dismiss a full removal proceeding and immediately institutes expedited removal proceedings. *See, e.g.*, Compl. ¶¶ 3–7; Opp. at 11. This creates the risk that the alien will be deported swiftly with minimal process. *See, e.g.*, Compl. ¶¶ 103, 108.

On top of that, Plaintiffs allege, aliens are now typically immediately arrested once their full removal proceedings are dismissed. *Id.* ¶ 74. That brings up the final set of policies Plaintiffs challenge—the "Courthouse Arrest Guidance." *See id.* ¶¶ 39–59. Plaintiffs say that the Government is making more arrests at immigration courthouses. *See id.* ¶¶ 39, 106. They attribute this practice to new guidance from DHS and EOIR that followed each agency's rescission of prior policies limiting immigration arrests in courthouses. *See id.* ¶¶ 58–59.

Plaintiffs filed this lawsuit in July to end these practices. *See* Compl. Across eleven counts, they challenge the policies surveyed above under the APA as arbitrary and capricious, contrary to statute, and contrary to constitutional right. *See id.* ¶¶ 129–97; 5 U.S.C. § 706(2)(A), (B). For these claims, Plaintiffs seek wide-ranging relief against a slew of Government agencies and officers responsible for immigration enforcement. *See* Compl. ¶¶ 30–38, *id.* at 54–56.

The Government seeks dismissal under Rules 12(b)(1) and 12(b)(6). *See* Mot. to Dismiss, ECF No. 34. Plaintiffs oppose. Opp., ECF No. 38. The parties also filed dueling motions over the Administrative Record. Mot. to Expedite, ECF No. 8-1; Cross-Mot. to Stay Obligation to File a Certified Index ("Mot. to Stay"), ECF No. 15. These motions are now ripe.[2]

---

[2] One of the individual Plaintiffs, J.L., voluntarily dismissed his claims. Notice of Voluntary Dismissal, ECF No. 39; *see* Compl. ¶ 27.

**II.**

To survive a motion to dismiss under Rule 12(b)(1), a plaintiff must show that the Court has subject matter jurisdiction over his claims. *See Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015). The Court must "treat the complaint's factual allegations as true . . . and must grant plaintiff the benefit of all inferences that can be derived from the facts alleged." *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000) (cleaned up). But those factual allegations "will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim." *Schilling v. Speaker of U.S. House of Reps.*, 633 F. Supp. 3d 272, 274–75 (D.D.C. 2022), *aff'd sub nom. Schilling v. U.S. House of Reps.*, 102 F.4th 503 (D.C. Cir. 2024) (cleaned up). If the Court determines that it lacks jurisdiction, it must dismiss the claim or action. Fed. R. Civ. P. 12(b)(1), 12(h)(3).

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Hurd v. District of Columbia*, 864 F.3d 671, 678 (D.C. Cir. 2017) (cleaned up). A plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court accepts the complaint's factual allegations as true and grants a plaintiff "all inferences that can be derived from the facts alleged." *Xia v. Tillerson*, 865 F.3d 643, 649 (D.C. Cir. 2017) (cleaned up).

**III.**

Plaintiffs' claims fall into four buckets. They challenge: (1) the Dismissal Policies, (2) the Concurrent Proceedings Guidance, (3) the Expanded Expedited Removal Guidance, and (4) the Arrest Policies. The Government offers a host of jurisdictional and non-jurisdictional reasons for dismissing each set of claims. Addressing these arguments in turn, the Court

concludes that they are mostly incorrect or premature.  Though the individual Plaintiffs'
challenges to the Dismissal Policies must be dismissed for lack of jurisdiction, the remaining
claims survive for now.

### A.

Take first the challenges to the Dismissal Policies.  Recall that these are the policies that
allegedly prompt DHS attorneys and immigration judges to swiftly and orally dismiss full
removal proceedings.  *See* Compl. ¶¶ 61, 64.  The individual Plaintiffs' challenges to these
policies falter because 28 U.S.C. § 1252(g) strips the Court of jurisdiction over them.  But that
provision does not apply to the organizations' challenges.  And the Government identifies no
other permissible basis for dismissing those claims.  So the organizations' claims proceed.

### i.

At the outset, the Court must dismiss the individual Plaintiffs' challenges to the Dismissal
Policies because it lacks jurisdiction over those claims.  Congress carefully limited judicial
review of removal orders.  *See* 8 U.S.C. § 1252.  Except as provided in § 1252, "no court shall
have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision
or action by the Attorney General to commence proceedings, adjudicate cases, or execute
removal orders against any alien."  *Id.* § 1252(g).  Because Plaintiffs' claims "aris[e] from" the
Attorney General's decision to "adjudicate cases" and because nothing in § 1252 makes these
claims reviewable, the Court lacks jurisdiction over them.

Section 1252(g), to be sure, does not bar review of "all claims arising from deportation
proceedings."  *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999).  It
"applies only to three discrete actions the Attorney General may take:  her 'decision or action' to

'*commence* proceedings, *adjudicate* cases, or *execute* removal orders.'" *Id*. (quoting 8 U.S.C. § 1252(g)).

Mindful of the appropriately narrow construction § 1252(g) demands, the Court nevertheless concludes that Plaintiffs' challenges to the Dismissal Policies are challenges "arising from" decisions to "adjudicate cases." 8 U.S.C. § 1252(g).[3] To "adjudicate" a case is to "settle judicially" a case. Merriam Webster's Collegiate Dictionary 15 (10th ed. 1997); *see* Black's Law Dictionary (7th ed. 1999) (defining "adjudication" as "[t]he legal process of resolving a dispute"). Plaintiffs' challenges to the way the Government resolves removal proceedings fall comfortably within that definition. They challenge both the ultimate outcome— dismissal—and the process for arriving at that outcome. They protest, for example, that the Dismissal Policies deprive aliens of opportunities to present evidence and submit rebuttal briefs. *See, e.g.*, Compl. ¶¶ 150, 156, 166. And the authorities they invoke include regulations governing proceedings as well as the Immigration Court Practice Manual. *See, e.g., id*. ¶¶ 145, 157. All of this confirms that Plaintiffs challenge the process by which removal cases are settled. In other words, their claims "arise from" the way the Government has decided to "adjudicate" removal cases. 8 U.S.C. § 1252(g).

Section 1252(g)'s historical context confirms that Plaintiffs' challenges fall within its scope. *See FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000). Subsection

---

[3] Plaintiffs challenge DHS Guidance, as well as guidance issued within the Justice Department. *See* Compl. ¶¶ 141–68. Both sets of policies are covered by § 1252(g). Although that statute refers only to the Attorney General's decisions, courts treat the INA's references to the Attorney General as encompassing actions DHS takes to enforce immigration law. *See, e.g., Johnson v. Guzman Chavez*, 594 U.S. 523, 527 n.1 (2021); *Nielsen v. Preap*, 586 U.S. 392, 397 n.2 (2019). That is because Congress transferred INA enforcement authority from Justice Department entities to DHS when the latter was created. *See* Consolidated Appropriations Resolution, 2003, Pub. L. No. 108-7, § 105, 117 Stat. 11, 531 (codified at 8 U.S.C. § 1103); Homeland Security Act of 2002, Pub. L. No. 107-296, § 441, 116 Stat. 2135, 2192 (codified at 6 U.S.C. § 251).

g, the Supreme Court explained in *Reno*, originated out of concern for the Executive's discretion to decide whether to continue with removal proceedings. *See Reno*, 525 U.S. at 483–84. Before Congress added subsection g, the Executive "had been engaging in a regular practice (which had come to be known as 'deferred action')" of exercising its "discretion to abandon" the removal process "for humanitarian reasons for simply for its own convenience." *Id.* at 484. That practice generated suits from aliens who challenged the Executive's refusal to defer their cases. *See id.* Section 1252(g) responded to the rise in this litigation. *See id.* at 483–85. It "seems clearly designed to give some measure of protection to no deferred action decisions and similar discretionary determinations, providing that if they are reviewable at all, they at least will not be made the bases for separate rounds of judicial intervention outside the streamlined process that Congress has designed." *Id.* at 485 (citation omitted).

The "no deferred action" challenges that spurred § 1252(g) and Plaintiffs' claims here are two sides of the same coin. Both ask courts to review the Executive's "discretion to abandon" a removal proceeding. *Reno*, 525 U.S. at 483. The only difference between the claims is the desired outcome. The aliens challenging the Government's refusal to defer removal wanted to stop the removal process. *See id.* at 484. Here, the current Administration's more muscular approach to expedited removal makes remaining in a full removal proceeding more attractive to Plaintiffs. But at bottom, both types of claims ask the Court to interfere with the Executive's decisions about how to proceed with a particular removal case. *See id.* at 483–84.

More, § 1252(g)'s exemption for claims made "as provided" elsewhere in § 1252 does not apply here. The first possible jurisdiction restoration applies only to claims for review of a "final order of removal." 8 U.S.C. § 1252(a)(1); *see id.* § 1252(b). A dismissed case produces no such order. The second possibility—§ 1252(e)—is equally unhelpful. That provision permits

8

review of decisions related to expedited removal and does not necessarily require a final removal order. *See, e.g.*, *id.* § 1252(e)(3). But Plaintiffs' claims arise from full removal proceedings. Indeed, Plaintiffs themselves disclaim § 1252(e)'s application. *See* Opp. at 31–32. And the absence of any jurisdictional grant to review claims related to the dismissal of a removal proceeding makes sense. As *Reno* explains, Congress created several pathways for review of removal decisions, *e.g.*, 8 U.S.C. §§ 1252(b), (e), but it declined to extend that jurisdiction to review of decisions *not* to proceed with removal, *Reno*, 525 U.S. at 483–85.

Plaintiffs' two counterarguments cannot escape § 1252(g). First, they protest that § 1252(g) does not apply because they challenge policies that guide immigration judges and DHS attorneys, rather than particular acts "attempt[ing] to adjudicate cases." Opp. at 35. Plaintiffs walk an impossible line. Elsewhere they insist that the Dismissal Policies bind immigration officials and impact particular case dispositions. *See id.* at 41–42. More, Plaintiffs' claims do target particular decisions. How else would they have standing? Plaintiffs do not merely ask the Court to vacate the existing policies. They want the Court to undo individual dismissals. *See* Compl. at 56 (asking the Court to "[r]estore Individual Plaintiffs to the procedural posture that they enjoyed prior to Defendants' unlawful actions"); Opp. at 45 (insisting that getting rid of a Dismissal Policy would not completely remedy Plaintiffs' injuries if some individuals' "formal removal proceedings remain dismissed"). This confirms that the individual Plaintiffs' claims are challenges to the Government's "decision" about how to "adjudicate" their "cases." 8 U.S.C. § 1252(g).

Second, Plaintiffs argue that dismissal decisions do not amount to "adjudications" because a dismissal "leaves open the question whether a person is removable" and "does not prevent a noncitizen from applying for relief again." Opp. at 36. That argument wrongly

equates adjudication with resolution of a case on the merits. Federal judges routinely dismiss cases short of final resolution on the merits. No one questions that such dismissals are "adjudications." *Reno*'s description of § 1252(g)'s history confirms the same is true in the removal context. The "no deferred action" challengers—like Plaintiffs here—went to court without final removal decisions, asking courts to interfere with the Executive's continued adjudications. *Reno*, 525 U.S. at 485.

Because § 1252(g) withdraws subject matter jurisdiction over the individual Plaintiffs' claims, the Court must dismiss them. Given that conclusion, the Court need not consider the Government's remaining arguments for dismissal.

**ii.**

Moving to the organizations' challenges to the Dismissal Policies, the Government again seeks dismissal. This time, its arguments fall short.

First, Plaintiffs' allegations establish this Court's subject matter jurisdiction over the organizations' claims. Unlike the individual Plaintiffs' claims, the organizational Plaintiffs' Dismissal Policies challenges do not fall within § 1252(g)'s scope. That is because the provision only applies to "cause[s] or claim[s] *by or on behalf of any alien*." 8 U.S.C. § 1252(g) (emphasis added). The organizational Plaintiffs are not themselves aliens, and they assert injuries to their own operations, rather than bringing claims "on behalf of any alien" they serve. *See* Opp. at 21–22, 22–27 & n.4; *accord Texas v. United States*, 809 F.3d 134, 164 (5th Cir. 2015) (refusing to apply § 1252(g) to States' challenges to the Deferred Action for Parents of Americans and Lawful Permanent Residents program because the States "assert[ed] their own right to the APA's procedural protection").

10

The Government next seeks refuge in § 1252(b)(9), but that provision is also inapplicable. Mot. to Dismiss at 30–32. This "zipper clause" channels "all questions of law and fact . . . arising from any action taken . . . to remove an alien from the United States" into a proceeding before a circuit court. 8 U.S.C. § 1252(b)(9); *see Guerrero-Lasprilla v. Barr*, 589 U.S. 221, 230 (2020). But the provision "applies only with respect to review of an order of removal." *Mass. Coal. for Immigr. Reform v. DHS*, 621 F. Supp. 3d 84, 98 (D.D.C. 2022) (quoting *INS v. St. Cyr*, 533 U.S. 289, 313 (2001)) (cleaned up). The organizations challenge policies resulting in case dismissals, not final orders of removal. So § 1252(b)(9) does not apply. *Accord Mass. Coal. for Immigr. Reform*, 621 F. Supp. 3d at 98–99.

Second, the Government's attacks on the organizations' standing come up short for now. At least one of the immigrant-aid groups—American Gateways—adequately alleges an "actual or threatened injury in fact" to its interests that is "fairly traceable to the [Dismissal Policies] and likely to be redressed by a favorable court decision." *Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 919 (D.C. Cir. 2015). To allege injury to its own interests, American Gateways must show that "the defendant's allegedly unlawful activities injured [the organization's mission]" and that it "used its resources to counteract that injury." *Am. Soc. for the Prevention of Cruelty to Animals v. Feld Ent., Inc.*, 659 F.3d 13, 25 (D.C. Cir. 2011). At the motion-to-dismiss stage, it must "clearly allege facts demonstrating" each prong. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (cleaned up).

American Gateways clears this hurdle. Beginning with injury in fact, it alleges that the Dismissal Policies impede its mission of assisting aliens in removal proceedings. *See* Compl. ¶¶ 29, 118. It also alleges that it diverts resources to counteract that effect. While American Gateways staffers previously offered help to many aliens in courthouse hallways, they now need

11

to sit through individual removal proceedings to learn whether an oral case dismissal occurs.  *Id.*

¶ 118.  As a result, American Gateways now helps fewer aliens.  *Id.* ¶¶ 118, 120.

At least one court in this district has rejected this staff-diversion theory, reasoning that the

organization "is still able to perform its fundamental purpose[]" of advising aliens.  *Angelica S.*

*v. DHHS*, 786 F. Supp. 3d 158, 172 (D.D.C. 2025).  But other courts have accepted similar injury

theories, sometimes with little attention to whether the challenged policy truly impedes the

organization's mission.  *See, e.g.*, *Cath. Legal Immigr. Network, Inc. v. EOIR*, 513 F. Supp. 3d

154, 170 (D.D.C. 2021); *CAIR Coal. v. Trump*, 471 F. Supp. 3d 25, 38–39 (D.D.C. 2020); *Nw.*

*Immigrant Rts. Project v. USCIS*, 496 F. Supp. 3d 31, 48 (D.D.C. 2020).

The Court need not take a side on this issue now.  *Angelica S.* arose on a request for a

preliminary injunction.  786 F. Supp. 3d at 169.  That posture demanded more evidence from the

organization about the way the challenged rule affected its operations.  *See id.* at 170.  Here,

meanwhile, Plaintiffs only need "to state a *plausible* claim that each of the standing elements is

present."  *Jibril v. Mayorkas*, 20 F.4th 804, 814 (D.C. Cir. 2021) (cleaned up).  And the Court

must accept American Gateways's allegations about the ways the Dismissal Policies impede its

work and the steps it has taken to counteract that asserted harm.  *See, e.g.*, *Arpaio*, 797 F.3d at

19.  With those standards in mind, American Gateways' allegations of injury are enough for

now.  Compl. ¶¶ 116, 118.

American Gateways likewise satisfies causation and redressability at this stage.  It alleges

that it changed its staffing practices because of the Dismissal Policies.  *Id.* ¶¶ 118, 120.  And the

Court could remedy this harm by vacating the Policies.  *See id.* at 55.  This allegedly available

relief satisfies redressability "at the motion to dismiss stage."  *See Severino v. Biden*, 71 F.4th

1038, 1043 (D.C. Cir. 2023).  American Gateways thus clears Article III.  Of course, that does

not mean that the same will be true at future stages.  *See Cal. Cattlemen's Ass'n v. Fish & Wildlife Serv.*, 369 F. Supp. 3d 141, 145 (D.D.C. 2019) (explaining how the standing burden grows in successive stages of litigation).[4]

Third, the Government has not established that Plaintiffs' challenge to the EOIR Dismissal Policy is moot.  After moving to dismiss, the Government told the Court that it withdrew that purported policy.  Notice of Supp. Authority, ECF No. 35.  That withdrawal, the Government asserts, moots any challenge to the EOIR Dismissal Policy.  *Id.* at 1; Reply at 24, ECF No. 46.  But the Government's "voluntary cessation of a challenged practice will moot a case only if the [Government] can show that the practice cannot reasonably be expected to recur."  *FBI v. Fikre*, 601 U.S. 234, 241 (2024) (cleaned up).  The Government has not shouldered this "formidable burden."  *Id.* (cleaned up).  In fact, the Government's mootness argument is cursory at best.  *See* Notice of Supp. Authority at 1; Reply at 24.  If the Government wishes to mount an affirmative argument in support of mootness, it may do so at summary judgment.

Finally, the Government's remaining arguments for dismissal are at the very least premature.  The Government's most developed argument is that Plaintiffs fail to plausibly allege that the Dismissal Policies are final agency actions.  Mot. to Dismiss at 33–34, 35, 36; *see* 5 U.S.C. § 704.  But Plaintiffs' allegations, taken as true, do exactly that.  *See* Compl. ¶¶ 60–67. Whether those allegations are ultimately correct requires resort to the Administrative Record. *See* Opp. at 43.  So the issue remains for another day.  *Accord Ass'n for Educ. Fin. & Pol'y, Inc.*

---

[4]  Having concluded that American Gateways plausibly alleges standing, the Court need not consider whether Immigrant Advocates Response Collaborative separately has standing to challenge the same policies.  *See Carpenters Indus. Council v. Zinke*, 854 F.3d 1, 8 (D.C. Cir. 2017).  Nor does the Court consider whether American Gateways alleges an associational injury—Plaintiffs waive such a theory.  *See* Opp. at 22 n.4.

*v. McMahon*, --- F. Supp. 3d ---, 2026 WL 523023, at \*10 (D.D.C. 2026).  The Government also argues that the DHS Guidance implicates unreviewable prosecutorial discretion, but its argument on this front is limited to a half-hearted analogy.  *See* Mot. to Dismiss at 36–37; Reply at 25.  A gesture to a case outside the immigration context where prosecutorial discretion precluded review will not carry the day.  Last, "because Defendants have not produced a complete administrative record, the Court cannot properly evaluate" the Government's remaining arguments on the merits.  *Vassiliades v. Rubio*, 792 F. Supp. 3d 1, 21 (D.D.C. 2025) (cleaned up); *see* Mot. to Dismiss at 34–35, 36–37.  The Government may revive its arguments as appropriate down the line.

**B.**

Turn now to Plaintiffs' challenges to the Government's expanded use of expedited removal and use of expedited removal concurrently with full removal proceedings.  These claims demand similar analysis, so the Court addresses them together and concludes that they may continue.

Start, of course, with jurisdiction, and with standing in particular.  At least some individual Plaintiffs have plausibly alleged standing.  The Complaint alleges that Plaintiffs L.H., K.M., and M.K. were put in expedited removal proceedings while their full removal proceedings remain pending (because they appealed the full removal dismissal).  *See* Compl. ¶¶ 16, 22, 24.[5]

---

[5] Although the Government initially contested Plaintiffs' allegations on this score, it backs away from that argument in its reply.  *Compare* Mot. to Dismiss at 29 (arguing that "none of the Individual Plaintiffs claim to have been subjected to the supposed Concurrent Proceedings Guidance") *with* Reply at 19–20 (admitting that "certain plaintiffs have alleged that they are subject to expedited removal orders and have pending appeals" but briefly criticizing those allegations as "contradictory").  The Government's position on this front is not entirely clear. But as already discussed, Plaintiffs allege that they are subject to concurrent proceedings.  If the Government wishes to contest the accuracy of those allegations, it can do so at summary judgment.

And it also alleges that some individuals—L.H., E.P., E.C., and P.D.—received expedited removal orders even though they have been in the country for more than two years. *Id.* ¶¶ 16, 18, 20–21. At the very least, the Court can redress these injuries by vacating the challenged policies. *See id.* at 55. That allegedly available relief satisfies redressability "at the motion to dismiss stage." *Severino*, 71 F.4th at 1043. The Government tries to poke holes in some Plaintiffs' standing. *See, e.g.*, Reply at 18–20. But the Court need not address those possible flaws at this stage. It is enough for now that at least some Plaintiffs plausibly allege standing. *See Carpenters Indus. Council v. Zinke*, 854 F.3d 1, 8 (D.C. Cir. 2017).

Continuing in the jurisdiction inquiry, Plaintiffs have also shown that the Court has subject matter jurisdiction over these claims. Plaintiffs concede that these claims "concern" expedited removal and are thus reviewable only according to the procedures set forth in § 1252(e). Opp. at 32–33; *see* 8 U.S.C. § 1252(a)(2)(A)(iv) (forbidding judicial review of "procedures and policies adopted . . . to implement" expedited removal "except as provided in subsection (e)"). Subsection (e)(3) allows this Court to review some expedited removal related decisions, including whether a "written policy directive" or "written policy guideline" is "in violation of law." 8 U.S.C. § 1252(e)(3)(A)(ii). Plaintiffs seek this sort of review. They allege that the Government promulgated written policies expanding expedited removal and ask the Court to determine whether those policies are contrary to law or arbitrary and capricious. *See* Compl. ¶¶ 169–96. That situates their claims within the jurisdictional grant.

The Government offers two reasons § 1252(e)(3)(A) might not apply, but neither carries the day. First, it says that the individual Plaintiffs ought to instead pursue their claims in habeas. Mot. to Dismiss at 28, 29–30. It is true that the statute contemplates that some expedited-removal challenges will be brought as habeas claims. *See* 8 U.S.C. § 1252(e)(2). But, again, the

15

statute explicitly permits this Court—and only this Court—to review whether written policies related to expedited removal are lawful. *Id.* § 1252(e)(3). And Plaintiffs seek relief consistent with that type of claim. *See* Compl. at 55. That is enough for now. The Government may continue to develop its arguments down the line, including whether the relief Plaintiffs seek is unavailable because "there is another adequate remedy in a court." *See Trump v. J.G.G.*, 604 U.S. 670, 674 (2025) (Kavanaugh, J., concurring) (cleaned up).

Second, the Government argues that § 1252(e)(3)(A) does not allow arbitrary and capricious claims. Mot. to Dismiss at 22, 28. Not so. The Government's argument trades on the fact that § 1252(e)(3)(A) does not explicitly refer to "arbitrary and capricious review." *See id.* at 22. From that, the Government concludes it is unavailable. *Id.* But the statute undeniably permits this Court to consider whether a policy is "in violation of law." 8 U.S.C. § 1252(e)(3)(A)(ii). And agency action that is arbitrary or capricious is "not in accordance with law." 5 U.S.C. § 706(2)(A) (permitting a reviewing court to hold unlawful agency action that is "arbitrary, capricious . . . *or otherwise not in accordance with law*" (emphasis added)). More, courts regularly consider arbitrary and capricious challenges under § 1252(e)(3)(A). *See, e.g.*, *Las Americas Immigrant Advoc. Ctr. v. DHS*, 783 F. Supp. 3d 200, 222 (D.D.C. 2025), *reconsideration denied*, No. 24-CV-1702 (RC), 2025 WL 2105564 (D.D.C. July 28, 2025); *Coal. for Humane Immigrant Rts. v. Noem*, No. 25-CV-872 (JMC), 2025 WL 2192986, at *31 (D.D.C. Aug. 1, 2025); *cf. Make the Rd. New York*, 962 F.3d at 618, 622 (reviewing approvingly a district court's exercise of jurisdiction over such a claim).

Moving to the merits, the Government argues that Plaintiffs have not plausibly alleged that the challenged policies exist. Mot. to Dismiss at 27–28, 29. It specifically takes issue with Plaintiffs' reliance on "information and belief" pleading. *See id.*; Compl. ¶¶ 99, 101. But

16

"[e]ven after the Supreme Court's decisions in *Twombly* and *Iqbal*, a plaintiff may still plead facts upon information and belief where the facts are peculiarly within the possession and control of the defendant, or where the belief is based on factual information that makes the inference of culpability plausible." *Hedgeye Risk Mgmt., LLC v. Heldman*, 271 F. Supp. 3d 181, 189 (D.D.C. 2017) (cleaned up).  Both situations are present here.  The Government declined to share documents related to the policies with Plaintiffs.  *See* Mot. to Stay, ECF No. 16.  Had the Government instead followed the normal course, Plaintiffs would have access to the Administrative Record by now, which would likely include the disputed documents if they exist. *See* LCvR 7(n)(1).  And Plaintiffs supplement their information-and-belief allegations with anecdotal evidence that the policies exist.  Compl. ¶¶ 99, 101.  With all of this in mind, Plaintiffs clear the pleading stage's modest hurdle.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

### C.

Finally, take Plaintiffs' challenges to the Courthouse Arrest Policies.  Plaintiffs allege that DHS and EOIR rescinded prior policies limiting arrests made in courthouses.  *See* Compl. ¶¶ 39–59.  Those rescissions, according to Plaintiffs, are arbitrary and capricious.  *Id.* ¶¶ 129–40. Once again, the Government offers many arguments in support of dismissal.  And, once again, Plaintiffs meet the pleading stage's low demands.

To start, the Court need not consider the Government's full suite of standing arguments because at least Plaintiff K.M. has plausibly alleged standing.  *See Carpenters Indus. Council*, 854 F.3d at 8.  K.M. "was arrested by ICE" at an immigration courthouse and detained.  Compl. ¶¶ 22, 106.  Although she was released, she has since received an expedited removal order and fears that she will be arrested again at a courthouse.  *Id.* ¶ 22.  As for causation, the Complaint

17

attributes K.M.'s arrest and future fear of arrest to the Government's new Courthouse Arrest Policy. *See id.* ¶¶ 40–59. And, redressability, is also satisfied for now because the Court could declare the policies unlawful and enjoin the Government from rearresting K.M. in a courthouse. *Id.* at 54.[6] So K.M. clears Article III for now. The Government is free to challenge her evidentiary showing—and that of any other Plaintiff—in the future. *See Cal. Cattlemen's Ass'n*, 369 F. Supp. 3d at 145.

Next, the Government argues that this Court lacks subject matter jurisdiction over the claims. Those arguments falter because they presume that the Courthouse Arrest Policies claims must be analyzed as challenges related to expedited removal decisions under § 1252(a)(2). Mot. to Dismiss at 20–23. To support that premise, the Government tries to paint these claims as inseverable from Plaintiffs' concern about the Government's expanded use of expedited removal. *See id.* at 19 ("In sum, Plaintiffs allege that [the Courthouse Arrest] policies' direct the government to arrest aliens for expedited removal proceedings at immigration courthouses."). That description is not unfounded. *See, e.g.*, Opp. at 11, 13 (portraying the Courthouse Arrest Policies as part of the Government's alleged broader scheme to expand expedited removal). But for now, the Court must take the Complaint as it appears. *See Mendoza v. Perez*, 754 F.3d 1002, 1010 (D.C. Cir. 2014). And the Complaint alleges that the Courthouse Arrest Policies apply not only to aliens placed in expedited removal, but also to "family members or friends" accompanying the target alien. Compl. ¶ 55. That allegation signals a broader challenge. More,

---

[6] Any debate about the scope of the appropriate remedy remains for another day. *See Severino*, 71 F.4th at 1043 (relying on allegedly available relief to establish redressability "at the motion to dismiss stage"). That includes whether 8 U.S.C. § 1252(f)(1) prevents the Court from enjoining the Arrest Policies writ large. *See* Mot. to Dismiss at 21. The Government does not dispute that the Court could enjoin enforcement of the policies as against "an individual alien" like K.M. 8 U.S.C. § 1252(f)(1). And the D.C. Circuit has explained that § 1252(f)(1) does not preclude declaratory relief. *N.S. v. Dixon*, 141 F.4th 279, 290 n.7 (D.C. Cir. 2025).

even if these claims did implicate expedited removal decisions, their claims—at least as framed at this stage—may qualify as systemic challenges subject to review in this Court. *See* 8 U.S.C. § 1252(e)(3).

## IV.

Before wrapping up, the motions related to the Administrative Record demand attention. In an APA case, the Government must ordinarily "file a certified list of the contents of the administrative record with the Court within 30 days following service of the answer to the complaint or simultaneously with the filing of a dispositive motion, whichever occurs first." *See* LCvR 7(n)(1). Both parties here look to modify this obligation. Nine days after initiating suit, Plaintiffs moved to expedite Administrative Record production. Mot. to Expedite, ECF No. 8-1. The Government opposed that request and asked the Court to stay its obligation to file a certified list of the Administrative Record contents. Mot. to Stay, ECF No. 16; *see* Standing Order at 5–6, ECF No. 4 (permitting an agency to request an exemption from Rule 7(n) if the agency believes the Administrative Record contents "would not be helpful" for resolving a motion to dismiss).

Because the Court resolved the motion to dismiss without the Administrative Record contents, it grants the Government's motion and denies Plaintiffs' request. Because this case will progress, however, the Government now must turn over the Administrative Record. *See generally* LCvR 7(n)(1). The Court therefore orders the parties to confer and agree upon a proposed scheduling order to govern future proceedings.

## V.

To recap, all of Plaintiffs' claims except for the individual Plaintiffs' challenges to the Dismissal Policies survive for now. The Government may, however, continue to develop its

arguments against the surviving claims at summary judgment.  At that point, the Court and the parties will be able to evaluate those claims with the benefit of the Administrative Record.

For all these reasons, it is hereby

**ORDERED** that Defendants' [34] Motion to Dismiss is GRANTED IN PART as to the Dismissal Claims (Counts III through VII) brought by the individual Plaintiffs and DENIED IN PART as to all remaining claims; it is further

**ORDERED** that Defendants' [16] Motion to Stay Obligation to File a Certified Index of the Administrative Record is GRANTED; it is further

**ORDERED** that Plaintiffs' [8] Motion to Expedite Production of the Administrative Record is DENIED; it is further

**ORDERED** that the parties meet and confer and file a proposed scheduling order to govern future proceedings in this matter within 30 days of the date of this Order.

Dated:  March 17, 2026                                    TREVOR N. McFADDEN, U.S.D.J.

20